IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CITY OF CHARLESTON,

                Plaintiff,

v.                                     CIVIL ACTION NO.  2:12-cv-00225

MYRON G. BOGGESS, et al.,

                Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court is the defendants' Motion to Dismiss [Docket 7]. Because I find that there is no "case of actual controversy" before the court as required by the Declaratory Judgment Act, 28 U.S.C. § 2201, the court does not have subject matter jurisdiction over the case, and the defendants' Motion to Dismiss is **GRANTED**.

I.      **Background**

This case presents an important question about the City of Charleston's compensation of its firefighters. The plaintiff is the City of Charleston, West Virginia (the "City"). The defendants, numbering approximately one hundred and sixty, are individuals employed as firefighters with the City (the "firefighters"). The City establishes an annual salary for the firefighters.

In 1991, the City and the firefighters reached a mutual understanding regarding the City's calculation of the baseline hourly rate used to determine compensation.[1] "Kelly Days" were also

---

[1] The parties disagree on whether this "mutual understanding" or "oral agreement" resulted in any contractual obligations, and this is one of the issues pending before the Circuit Court. I emphasize that I

established in 1991.[2] In 1993, Thomas Hayes, the City Attorney, advised the City that it was legally required by the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), to deduct vacation hours to arrive at the baseline hourly rate for its firefighters—the methodology that was agreed to in 1991. In 1994 and 1997, the City Council reduced the number of hours per week that the firefighters would work before overtime was required to be paid.[3] From 1991 to present, the hourly rate of pay for firefighters was determined by dividing their annual salary by the regular hours, and overtime was paid at one and one-half times the hourly rate after working beyond the regular hours.

From 1991 until 2011, the City calculated its firefighters' baseline hourly rates consistent with the formula agreed upon in 1991 and set forth by the District of Kansas in *Aaron v. City of Wichita*, 797 F. Supp. 898 (D. Kan. 1992) ("*Aaron I*"). *Aaron I* held that the city was required to subtract the number of overtime hours, the number of Kelly Days, and the number of vacation days each firefighter received before dividing that number into the annual salary to obtain the baseline hourly rate. In 2011, Charleston City Manager David D. Molgaard reviewed the City's methodology of calculating this baseline hourly rate. His review concluded that the Tenth Circuit had rejected the formula and overturned *Aaron I* in *Aaron v. City of Witchita*, 54 F.3d 652 (10th

---

make no findings on this issue, regardless of the terminology I might use to describe the 1991 "agreement" herein.

[2] As described by the defendants:

> Some agencies have a rotating system that provides their members additional scheduled time off to meet a negotiated agreement regarding work hours; these are frequently called "Kelly Days." Kelly Days or Rotating Days Off is a term which originated in Chicago in 1936 when Mayor Edward Kelly gave firefighters a day off for every 7 days on duty. A common Kelly arrangement is a three-platoon system that works a "24 on/48 off" rotation with a Kelly Day every seventh shift which Charleston uses.

(Br. in Supp. of Mot. to Dismiss [Docket 8], at 8 n.1.)

[3] According to the defendants, from 1991 to 1995, firefighters received overtime pay after working 51.7 hours per week. From 1995 to 1996, they received overtime pay after working 50.4 hours per week. And from 1997 to present, they received overtime pay after working 49 hours per week.

Cir. 1995) ("*Aaron II*"). *Aaron II* held that the proper hourly rate is to divide the salary by the *total hours* and not just the non-overtime hours.[4]

The City determined that the previous formula inflated the calculation of the baseline hourly rates, which resulted in overpayment of over $1.4 million to its firefighters in wages that were not required under FLSA. The City amended the 2011-12 budget and enacted Bill No. 7506, which "modified the duty hours, vacation leave, sick day benefits and calculation of overtime compensation for its firefighters." (Pl. City of Charleston's Resp. to the Defs.' Mot. to Dismiss [Docket 19], at 5-6.) Bill No. 7506 "adopted the Section 207(k) exemption under the [FLSA] and provided that the City would henceforth pay its firefighters premium compensation for any unscheduled time worked in excess of 212 hours within a 28 day period." (*Id.*)

## II.    Procedural History

On November 23, 2011, the firefighters filed a grievance and petitioned the Charleston Firemen's Civil Service Commission to reinstate the pre-2012 methodology for calculating the base hourly rate. This petition was denied for lack of jurisdiction.

On February 2, 2012, the City filed a Request for Declaratory Judgment and Relief in this court. The City based subject matter jurisdiction on 28 U.S.C. § 1331, asserting that an actual controversy has arisen under the FLSA regarding the "proper methodology for calculating hourly, overtime and overtime/holiday wages for firefighters." (Compl. ¶ 1.) The City requested a declaratory judgment and relief regarding the legality of its methodology under 29 U.S.C. § 201 *et seq.*, its application of 29 U.S.C. § 207(k), and the inapplicability of W. VA. CODE § 21-5C-3.

---

[4] The Fourth Circuit has since agreed with this method of calculation. *See Seets v. Anne Arundel Cnty.*, 40 F. App'x 744, 748 (4th Cir. 2002).

On February 24, 2012, the firefighters filed a Complaint and Petition for Writ of Mandamus in the Circuit Court of Kanawha County, West Virginia, *Boggess* v. *City of Charleston*, No. 12-MISC-119. Count One alleged violations of W. VA. CODE §§ 8-15-11, 8-15-25, and Part VII 7.01 of the Rules and Regulations of the Firemen's Civil Service Commission of the City of Charleston as a reduction in pay. Count Two essentially appealed the denial by the Commission to hear the firefighters' petition. This case is currently pending before the Circuit Court.

On May 3, 2012, the firefighters filed the instant Motion to Dismiss, asserting that no federal questions are involved. The firefighters allege that the methods used for overtime calculations were agreed to by the parties in November 1990 and began in January 1991. Thus, they argue that the methodology was not based on *Aaron I*'s interpretation of the FLSA, and therefore, no FLSA issue exists. The firefighters assert that the only issue between the City and the firefighters is contractual and under State law. The City has responded, and the firefighters have filed a reply. This Motion is now ripe for review.

## III.    Legal Standard

A motion to dismiss for lack of subject matter jurisdiction can be raised in two ways— upon the face of the complaint or upon the validity of the facts stated therein. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). In cases where the moving party contends "that a complaint fails to allege facts upon which subject matter jurisdiction can be based, the facts alleged are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id.*

In cases where the validity of the facts is being challenged, the burden falls on the party asserting jurisdiction to prove subject matter jurisdiction. *Id.* The district court applies the

standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. *Id.*

> The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that:
>
> In a *case of actual controversy* within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201 (emphasis added). The United States Supreme Court has repeatedly held that "the phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)). There is no bright-line test for whether declaratory judgment actions satisfy the case-or-controversy requirement. The Supreme Court has summarized the question in each case as "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

## IV.   Analysis

The firefighters frame the question as one under West Virginia state law: "Can the City of Charleston unilaterally change the employment contract with the firefighters thus reducing the calculation of the overtime rate of pay?" (Defs.' Reply to Pl. City of Charleston's Resp. to Defs.' Mot. to Dismiss [Docket 22], at 5.) The City frames the question as one under federal law:

5

"[W]hether the City's current methodologies for calculating and paying compensation to its firefighters are in accordance with the requirements of the FLSA." (Pl. City of Charleston's Resp. to the Defs.' Mot. to Dismiss [Docket 19], at 3.)

The City contends that its misinterpretation of federal law in reliance on *Aaron I* led to unnecessary payments of over $1.4 million to its firefighters in hourly and overtime wages that were not required under applicable FLSA standards. (Compl. ¶ 28.) The firefighters disagree, asserting that the City did not rely upon *Aaron I* in its original methodology, and that the City did not overpay the firefighters $1.4 million because the methodology was the result of an agreement between the City and the firefighters. The City claims that it has since corrected its methodology in accordance with its interpretation of the FLSA, and now wants the court to advise it as to whether this new methodology comports with the requirements of the FLSA.

The FLSA sets the *minimum* requirements for determining a regular hourly rate. *See Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945); *see also Butler v. DirectSat USA, LLC*, 800 F. Supp. 2d 662, 671 (D. Md. 2011) (discussing that the FLSA establishes "minimum requirements"); *Willins v. Credit Solutions of Am., Inc.*, No. 3:09-cv-1025-M, 2010 WL 624899, at *2 (N.D. Tex. Feb. 23, 2010) (noting that the Fifth Circuit's concern with the "statutory minimum" under the FLSA related to the minimum wage and the "minimum requirements" for overtime pay). Therefore, the FLSA only establishes "a national *floor* under which wage protections cannot drop, not [] absolute uniformity in minimum wage and overtime standards at levels established in the FLSA." *Pac. Merch. Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1425 (9th Cir. 1990).

I **FIND** that there is no controversy under the FLSA before the court. First, the record reflects that there is no question before the court regarding whether the City's calculation of

baseline hourly rates from 1991 through 2011 violated the FLSA. Indeed, it appears to be undisputed that the baseline hourly rate calculation agreed upon in 1991 comported with the requirements of the FLSA. As noted, the City believes that the incorrect calculations resulted in *overpayments* to the firefighters that were *not required* under FLSA. The firefighters deny the allegation that the City has overpaid $1.4 million, but argue that "[t]he FLSA merely sets the minimum regular hourly rate. The parties are free to contract for higher hourly rates and may agree to pay compensation according to any time or work measurement they desire." (Defs.' Reply to Pl. City of Charleston's Resp. to Defs.' Mot. to Dismiss [Docket 22], at 7.) Thus, the firefighters appear to agree that the calculation exceeded the minimum requirements of the FLSA, but contest the "overpayment" argument under their assertion that the City was contractually obligated to pay the higher amount. Consequently, even if the City did rely upon *Aaron I* in its calculation of the firefighters' baseline hourly rates, there is still no question before the court as to whether that methodology violated the FLSA.

I observe that the defendants have suggested that in 2001, the City was informed by the Law Firm of Heenan, Althen & Roles that the City had been violating FLSA because the City was paying firefighters "at overtime rates for tours of duty worked in excess of 216 hours during each [28-day] work period," when they are entitled to "overtime rates for tours of duty worked in excess of 212 hours during each 28-day work period." (Br. in Supp. of Mot. to Dismiss, Ex. 33 [Docket 7-33], at 1.) However, the firefighters do not allege or even suggest that this violation continued up to 2011, and the FLSA's statute of limitations would have long since run on any violation that may have occurred in 2001. Moreover, to any extent that the firefighters do suggest that a violation of the FLSA occurred in 2001, it would be under a different issue than the questions that the City wishes the court to answer today. The supposed violation in 2001 was the

City's payment of overtime in excess of 216 hours worked rather than 212 hours worked as required. That issue bears no relevance to the methodology used in calculating of the baseline hourly rates for the firefighters.

Second, if the firefighters believed that the new methodology adopted by the City that took effect in 2012 violated the FLSA, they could have brought a claim in federal court. They did not do so; rather, they brought a claim in State court, alleging only violations of State law and Commission rules, and nowhere have the firefighters even suggested that the new methodology violates the FLSA. Thus, there is no controversy as to whether the new methodology satisfies the requirements of the FLSA.

## V.        Conclusion

Because I **FIND** that there is no "case of actual controversy" under the FLSA for the court to decide, I **FIND** that the court does not have subject-matter jurisdiction over this matter under 28 U.S.C. § 2201. Accordingly, I do not reach any other issues argued by the parties, and the defendants' Motion to Dismiss is **GRANTED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        September 7, 2012

Joseph R. Goodwin, Chief Judge